May it please the court, your honor, on behalf of Jose Jaquez. I apologize. That's, we all have our own pronunciation ideas. So, your honor, there's two significant components of this case. The first is that there's a pending motion for remand under sentence six because of the medical expert testimony that was adduced at last year's hearing. I'm not sure if the panel wants to address that today, or if we wouldn't want to stick to the merits briefing. You should speak about whatever you would like to. Your honor, the medical expert... I have a question though, and that is the challenge to the vocational experts testimony regarding the conflict between the DOT and the other evidence. Was that waived or forfeited? I don't believe it was waived or forfeited, your honor, because the evidence was submitted to the appeals council. The appeals council accepts rebuttal evidence. The current regulations make a distinction between rebuttal evidence and non-rebuttal evidence. Non-rebuttal evidence is subject to the five-day rule must be presented to the ALJ before the hearing. Or have good cause. Rebuttal evidence to vocational expert testimony is fundamentally different. The claimant, as Shaibi points out, are rarely in a position to anticipate what a vocational expert might identify or might say. The seventh circuit in Britain versus Barnhart says that claimants are hampered in their ability to cross-examine because of the lack of pretrial discovery. Every time a claimant goes into a hearing, everyone in the room is surprised what the vocational expert says. Right, but doesn't Shaibi also say that you have to at least raise that issue somehow during the administrative proceedings, for example, by saying, I'm surprised and I'd like, you know, till tomorrow to find some rebuttal evidence or something? Your honor, this is where someone is represented, obviously. The, the nature of the hearing, the ALJ's obligations, the inherent surprise, and the Supreme Court's admonition, which is echoed in Shaibi, administrative proceedings. The ALJ decision is not final until the appeals counsel denies review. And when Mr. Hakas presents evidence to the appeals counsel, it is in the record. When the appeals counsel conducts its substantial evidence test review, and this court can do that as well under, under Bruce, and it's, it's the precedent upon which Bruce relied in reaching that result on a contested issue, if the commissioner intended to deprive the claimant of the ability to submit rebuttal evidence to the appeals counsel, the commissioner can promulgate a regulation that says exactly that. But this is a beneficent statute. This is a beneficent set of regulations. They're designed to protect claimants. And the rebuttal evidence that's, that we're relying on here addresses an issue that was not raised by the ALJ. Is this work part-time? And under Tackett versus Apfel, the ALJ has an obligation to frame a full and complete hypothetical question. The government yesterday submitted a notice of new authority, which is not new. The vocational expert handbook tells vocational experts to identify full-time work ostensibly, identify full-time work at step five of the sequential evaluation process. But nobody ever says that. And to rely upon that, which is clearly late, and I think it's waived for purposes of today's argument, it allows the ALJ and the vocational expert to speak in code that no one else in the room understands, that nobody else comprehends that the vocational expert is only going to identify full-time work, which the commissioner has tacitly conceded in these proceedings, but yet in the second circuit, the law of that circuit says that part-time work, the vocational expert has no obligation to weed that out. Your Honor, I think Brault is wrong on that point. This court should affirmatively state that where the vocational expert does not address an issue, whether or not this work is substantial gainful activity as defined by the commissioner, full-time work on a regular and continuing basis, and the claimant submits evidence at the appeals court, if there is a superstitious gap left in the ALJ questioning and the vocational expert testimony, then this court should review the record as a whole under universal camera and determine whether or not substantial evidence supports the proposition that this work exists in significant numbers and is substantial gainful activity as the commissioner has defined that term in its Chevron deference construct. The existence of substantial evidence is not waivable under BSTEC. It is not subject to waiver. And so for this court to say, we affirm the decision that Usher exists in significant numbers as full-time substantial gainful activity does not bode well for the system. It means that cross-examination of the vocational expert, vigorous cross-examination to explore issues that may or may not exist because most attorneys, most representatives, most claimants don't have the O&L online, don't have the occupational requirements survey, don't have the occupational outlook and, but they don't have the department of labor data on their phones, on their tablets, anywhere near, they have no idea whether or not the vocational expert has given testimony that is confirmable. Counsel, may I ask you a question on the merits of that argument, assuming that it was properly observed? Why does the information in ONA establish that there's not substantial evidence for the proposition that the work of an Usher exists in the national economy in substantial numbers? As I understand it, ONA establishes that this work is often part-time, but even setting aside the question of whether part-time work can be substantial gainful employment, it wasn't clear to me that it undermines the proposition that it would be possible to find this as a full-time job. So can you address that question? The ONA establishes that 90% of 117 or 120,000 jobs in the national economy are full, or 90% of those are part-time jobs, and under this circuit's precedent in Gutierrez, 25,000 jobs is the bright line. And 10% of even 200,000 jobs is less than the Gutierrez bright line. And so, because we don't know what the vocational expert included part-time and full-time, because we don't know the answer to that question, and because the commissioner bears the burden of production on that issue, the commissioner has not sustained his burden of proof. We need to look at the record and ask, is there substantial evidence that full-time work exists as an usher, that substantial gainful activity on a regular and continuing basis on this record, the ALJ failed in the TACIT standard, and failed to require the identification of full-time work pursuant to 96 AP, and the deletion of part-time work from the regulations. I have a minute 20 left. I'd like to see one follow-up question. Did the data say that only 10% are part-time? Wasn't the metric something fewer than 40 hours? So, we don't know exactly where the other 90%, where it fits in, right, in terms of the hours worth? Well, Social Security ruling 96 AP, which is the commissioner's interpretation of the statute and regulations, it's binding on the ALJs, states that substantial gainful activity at step five of the sequential evaluation process is a full-time schedule, eight hours a day, five days a week, or an equivalent schedule, and once we get to less than 40 hours a week, it becomes incumbent upon... We just end up speculating that that might qualify, but it doesn't, it facially does not meet the 96 AP standard. I have 20 seconds left. I'd like to reserve that. You may. We'll give you a minute for rebuttal. We asked quite a few questions. We'll hear from the commissioner next. Good morning. Shay Vond on behalf of the Commissioner of Social Security. It is our position that the issue regarding job numbers is waived under Chayibi's precedence, which reaffirmed the waiver principles established in 1999, which is that issues brought into federal court are forfeited unless they are meaningfully brought up during the administrative hearing before the administrative law judge. Counsel, let me get to the heart of what I find disturbing about this case. The ALJ and the vocational expert relied on the existence of two jobs that this claimant could perform, and the commissioner has now conceded that one of those jobs was erroneously included. So it all rises or falls on the availability of usher jobs to uphold the requirements of the regulation. And there are two things that are concerning to me about that. One is that it appears that a large number of these jobs are not full-time and therefore may not meet the requirements of the regulation at all. But even if we were to conclude that that issue isn't in front of us, how do we know that the vocational expert and the ALJ would have reached the same conclusion with only the usher job in front of them? And how do we know whether there would have been a different outcome or a different cross-examination in that circumstance? Well, Your Honor, I think Cheyabee would also answer that question. So even if you eliminate one of the occupations here, the non-usher jobs, you look to see what are the remaining numbers. And so the remaining numbers of the usher jobs is 90,000 as the vocational expert says. Well, we are reviewing what the ALJ said. And the ALJ said, here are two jobs. And so there are enough jobs. I guess what I'm unsure about is given, normally we have, in these cases, three or four jobs, and maybe one of them doesn't pan out, but the other ones are several hundred thousand jobs each. And it sort of doesn't make any difference. It seems to me that here, eliminating one of the two, to me, casts some doubt on whether the ALJ would have reached the same conclusion. How do we know that? Well, I think it's because of the large number of jobs that are left. It's 90,000. In this circuit, 25,000. But they're not full-time. Pardon? But they're not full-time, most of them, or many of them. Well, that hasn't, that has not been established. And that's the problem with this case, is that the claimant who's represented by an attorney, if they thought that these jobs, if there was any question that they were not full-time, should have asked that question at the proceeding. There's no indication on this record that the jobs that the VE identified were other than full-time. This is now a speculation that has been presented after the fact. This is something that should have been presented and must have been presented to the ALJ at the time of the hearing. And this question could have been presented, are any of these jobs part-time? There is no indication at the time of the hearing that that's the case. So the vocational expert has identified 90,000 jobs. Even if you're just looking at those jobs, according to the circuit's precedent, I was saying that even if the ALJ had just looked at the usher jobs at the time of the decision, would have conclusively found that those jobs were significant. This isn't like the jobs dropped down to less than 25,000. I think if that were the case, the Commissioner would probably have considered that a remandable issue. But that's not what we have. We have unchallenged vocational expert testimony, which in the circuit, the VE's testimony alone is substantial evidence. There was no question at the hearing to suggest that that testimony had any kind of faulty quality to it. What about the decision of the Appeals Council and specifically, I think it's page five of the record where they list the exhibits that they're considering, one of which is the brief that the claimant filed.  And as I understand the decision, they're saying, you know, this is the material that we have considered in reaching our decision. And then we said in Brewers that, you know, where the Appeals Council considers new evidence, that becomes part of the record and we can review it. So it would be one thing if the Appeals Council had said, you know, you're presenting this new stuff, but we're not going to look at it because it wasn't for the ALJ. But don't we get to consider it because they did? I would say that's, I don't know if it's the right analogy, but putting the cart before the horse. So, you know, a claimant can present whatever evidence they want to the Appeals Council. But when we're in federal court, the court is only going to look at issues that were properly preserved. So unless the claimant had actually preserved the issue before the ALJ, regardless of what evidence was presented to the Appeals Council, this court is only going to look at evidence that's related to non-forfeited issues. And so I think that's how you kind of square brews with Shaibi. It's that this court is only going to look at Appeals Council evidence to assess the substantial evidence that does or does not support the ALJ's decision, but only to those issues that claimant properly preserved for judicial review. So is it, are you saying that when the Appeals Council listed that document in their list of exhibits, that doesn't mean that they were considering it? All that means is that they were acknowledging that it had been filed before them? Is that how we should interpret that? Well, I don't think that necessarily matters in terms of the forfeiture issue. So again, the claimant is going to have to preserve the issues that he later raises in court at the hearing level. And regardless of what evidence is submitted to the Appeals Council or how the Appeals Council considers it, I think the non-forfeited issues are going to be subject to review. But I thought we said in Brewis that if the Appeals Council actually considers it, that's enough for it to be preserved. Are you, you're saying that's wrong? Well, I'm saying that doesn't square with Shaibi and Menal. So those cases held that in order for a court to have to consider an issue, it has to have been raised at the ALJ level. And so it doesn't matter then if the claimant is raising an issue to the Appeals Council. It also had to have been raised at the ALJ level. But counsel, Shaibi could not overrule Brewis. It means whatever it means. It was a three-judge panel decision. So if Brewis is properly interpreted to say that an issue that is actually decided or evidence that is, excuse me, evidence that is actually looked at by the Appeals Council becomes part of the record, then it's part of the record. And so then the question, the question is, what do we do with that? Well, I think it's part of the record in the sense that this court is part of the substantial evidence, part of the record for substantial evidence review. Well, then if that's true, counsel, if that's true, then there isn't substantial evidence to support the ALJ's decision. Because what you said earlier is that there's nothing to show that there weren't 90,000 full-time jobs. And if there is evidence to show that there weren't 90,000 full-time jobs, then and the other job you've conceded is not available to rely upon, why is there still substantial evidence? Well, again, it goes back to the issue of forfeiture. I don't think then you can square... That's not what I'm asking you. I'm asking you to assume that it's not forfeited, that we can consider all the evidence, including that which was brought to the Appeals Council. And so on the merits, you said earlier that there were 90,000 full-time jobs. But if this evidence is considered, there aren't, or at least arguably there aren't. So why wouldn't be... Well, if you're getting to the merits, the problem is that the evidence that the claimant had submitted to the Appeals Council, first of all, was incomplete. And it's, there's still no evidence that the vocational expert had used ONAD to derive these job numbers. So we have no, and again, the problem is that the question wasn't posed. It was a very simple question to pose to the vocational expert. What was the source of your evidence? Now, claimant has provided some alternative evidence that has been, hasn't been vetted by a vocational expert. So the quality of that evidence... Well, then why wouldn't we, why wouldn't we remand it for a new hearing in which that can be done? Because if there's not substantial, if there's doubt about whether there's substantial evidence, then it doesn't seem to be necessarily our job to resolve that factual issue. But I think the problem with that there is that when you have a situation where you can have all this evidence that was not presented at the hearing, presented to the appeals council, I can't imagine a scenario where we wouldn't have a remand every time, I guess, because you would have, no matter what the quality of the evidence is submitted, that there would be a never ending, I guess, administrative proceedings. There'd be no finality here. Well, not necessarily. This is a highly unusual situation in which there's only one job left and it appears not to be full time. That's quite unusual. Not everything that's sent to the appeals council has the potential to be dispositive. Well, I think then it would be, this would be carving out a kind of an unusual exception to the Shaidi rule, which is that... Well, Bruce, Bruce is the rule that I'm talking about though. Well, again, Your Honor, I think that the way you can square those two lines of cases is that we still need to, the claimant is still responsible for presenting this issue first to the ALJ at the ALJ level before you can raise this issue at all in the federal court, regardless of what evidence would be presented to the appeals council. I don't think that the appeals council line of cases should overrule what was stated in Shaidi, which basically reaffirmed what had been stated in Neal back in 1999, is there is this concept of administrative waiver that applies at the ALJ hearing level. Thank you, counsel. You'll give Mr. Rolfing a minute for rebuttal. Just have really two quick points, Your Honor. First is that Gutierrez versus Colvin, which is a different case than Gutierrez versus Commissioner, states that the court uses its common sense understanding and evaluating the reaching requirements of cashiers. I think we can also use our common sense understanding of the world that ushers are not a full-time job. It's just not something that ordinary, reasonable people would assume, yeah, usher, that's a full-time job. It's not. It's not. Nobody believes that to be true. The second is that in weaving its way from Bruce to Shaidi, and Neal clearly allows evidence to be submitted to the appeals council, so that also predates a reading of Shaidi that precludes appeals council evidence. This court should be very careful in weaving a judicial doctrine of waiver and forfeiture that has a facial conflict with the regulations. Bruce construed the regulations, and this court should stay true to Bruce. Thank you. Thank you, counsel. We appreciate very much the arguments from both of you. They were very helpful to us, and the case just argued is submitted.
judges: Graber, Miller, Lee